T.C. Summary Opinion 2001-109

UNITED STATES TAX COURT

ALI MOTAGHAYER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15237-99S.                    Filed July 25, 2001.

Ali Motaghayer, pro se.

Usha Ravi, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Subsequent section references are to the Internal Revenue Code in effect for 1995.  Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $13,129 in, and a section 6662(a) penalty of $2,625.80 with respect to, petitioner's 1995 Federal income tax.

The issues for decision are: (1) Whether, and if so to what extent, petitioner underreported his 1995 income; (2) whether any unreported income is subject to the tax imposed by section 1401; and (3) whether any underpayment of tax required to be shown on petitioner's 1995 Federal income tax return is due to negligence.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Saratoga, California.

Petitioner moved to the United States from Iran in 1985. In 1991, petitioner, his brothers Majeed and Nima Motaghayer, and his sister Mehri Motaghayer formed Submarine 21 Sandwiches & Salads (Submarine 21), a corporation that elected to be taxed under Subchapter S of the Internal Revenue Code. Petitioner and his siblings were equal shareholders in Submarine 21.

Submarine 21 owned and operated a sandwich shop in San Jose, California. During the year in issue, the shop was open seven days a week from approximately 11 a.m. until 9 p.m. Petitioner was the manager of the shop. Typically, he worked there 6 to 7 days a week. Aside from his managerial responsibilities, his duties at the shop also consisted of taking orders from customers

and preparing the food.  Other members of petitioner's family also worked at the sandwich shop.

On its 1995 Form 1120S, U.S. Income Tax Return for an S Corporation, Submarine 21 reported income, expenses and a net loss as follows:

| | |
|---|---|
| Gross receipts | $97,731 |
| Cost of goods sold | (39,423) |
| Total income | 58,308 |
| | |
| Deductions | |
|     Rents | 30,804 |
|     Taxes and licenses | 4,684 |
|     Depreciation | 4,332 |
|     Advertising | 3,574 |
|     Other deductions | 18,222 |
| Total deductions | 61,616 |
| | |
| Net loss | (3,308) |

Submarine 21 claimed no deduction for salaries and wages expenses.

During 1995, petitioner maintained a brokerage account with Charles Schwab and Co. (the brokerage account).  Petitioner engaged in numerous transactions and trades through the brokerage account on behalf of himself and other family members.  In a series of stock dispositions (not less than 14) that occurred between February 28 and October 23, 1995, petitioner realized a net gain totaling $42,479.

Petitioner also maintained a personal checking account at Valley Credit Union (the checking account).  In 1995, deposits totaling $77,485.58 were made into the checking account.  Of that

amount, fifteen cash deposits totaling $32,580 (the cash deposits) were made as follows:

| Date of Deposit | Amount |
|---|---|
| Jan.  6 | $3,635 |
| Jan. 17 | 5,340 |
| Jan. 18 | 8,700 |
| Jan. 23 | 4,000 |
| Feb.  1 | 350 |
| Feb.  7 | 1,000 |
| Mar.  7 | 1,000 |
| Mar.  7 | 400 |
| May   5 | 1,785 |
| June  6 | 100 |
| June 22 | 800 |
| July 17 | 120 |
| Nov. 20 | 1,700 |
| Dec. 13 | 150 |
| Dec. 19 | 3,500 |

Petitioner kept a check register for the checking account. For the most part, entries into the check register are in English, although some entries also contain notations made in Farsi.  With the exception of the $100 deposit made on June 6, all of the deposits listed above are recorded in the check register.  Some of the deposit entries contain notations made in Farsi.

On his 1995 Federal income tax return, petitioner reported adjusted gross income of $34,083, which includes:  (1) Dividend income of $55; (2) a short-term capital gain of $42,579 from the

stock dispositions discussed above; (3) a nonpassive loss of $827 from Submarine 21; and (4) a net operating loss carryover of $7,724. Petitioner did not report any wages or salary income.

The examination of petitioner's 1995 return resulted from respondent's receipt of four Forms 4789, Currency Transaction Report, from Valley Credit Union reporting the cash deposited by petitioner into the checking account in January of 1995. Petitioner met with respondent's agents several times during the course of the examination. Respondent's agents reviewed the monthly statements for the checking account, petitioner's check register, and the records from the brokerage account. Petitioner was asked to identify the sources of the cash deposits. He told the agents that one of the cash deposits came from the sale of an automobile and the other cash deposits resulted from gifts from family members.

In the notice of deficiency, respondent determined that the cash deposits represent income to petitioner. Respondent further determined that such income constitutes net earnings from self-employment within the meaning of section 1402 and is therefore subject to the self-employment tax imposed by section 1401. Lastly, respondent determined that the underpayment of tax required to be shown on petitioner's 1995 return is due to negligence and imposed a penalty under section 6662(a).

Discussion

1.  Unreported Income

Respondent contends that during the course of the examination, petitioner provided inconsistent explanations regarding the source of the cash deposits. According to respondent, petitioner failed to establish that the cash deposits were from nontaxable sources, and therefore the cash deposits represent income to petitioner. See Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48. By calling the Court's attention to petitioner's relationship to and involvement with Submarine 21, respondent suggests, if only by implication, that the source of the cash deposits was compensation that petitioner received for working in the sandwich shop.

Petitioner readily admits that he worked long hours at the sandwich shop during 1995, but claims that he received no compensation at all for his efforts. We understand that Submarine 21 was, as petitioner described it, a family business, and therefore, he did not expect to be, and was not, compensated as an unrelated employee might have been. Nevertheless, we find it difficult to accept petitioner's claim that he received no compensation whatsoever for his efforts, particularly when the extent of those efforts is considered.

Petitioner further claims that with four exceptions (discussed below), the source of the cash deposits was a gift from his mother. According to petitioner, his mother gave him $35,000 in November of 1994. Assuming, without finding, that this event occurred, we find it unlikely that a single cash gift made to petitioner in 1994 would result in the pattern of the cash deposits here under consideration.

Petitioner testified that one of the deposits made in January consisted of the proceeds of the sale of an automobile and that three deposits were made from the proceeds of checks payable to him from his brokerage account. Petitioner testified that he gave the brokerage account checks to his brother, who gave petitioner cash in return, which was then deposited into petitioner's checking account. According to petitioner, it was easier to have his brother cash the brokerage account checks because brokerage account checks deposited into petitioner's checking account took 2 weeks to clear. Petitioner could not identify the specific deposits to which the foregoing explanations related. We, like respondent, are not convinced that any of the cash deposits were from the sale of an automobile or the proceeds of brokerage checks cashed by petitioner's brother.

After careful consideration of the record, however, we are satisfied that some of the cash deposits were from nontaxable

sources. Specifically, we find that the source of the $8,700 deposit made on January 18 was a cash gift from petitioner's mother. This is consistent with petitioner's general claim and apparently noted in Farsi in the check register. Likewise, notations in the check register lead us to conclude that the $1,000 deposit made on February 7, and deposits for $1,000 and $400 made on March 7, were from nontaxable sources. Finally, given the amounts involved and the passage of time between the deposits and respondent's examination, we do not find it unusual that petitioner could not satisfactorily explain the deposits made on February 1, June 6, July 17, and December 13. We accept petitioner's generalized testimony that these four cash deposits were not from taxable sources.

Petitioner failed to satisfactorily explain the remaining deposits, specifically:

| Date of Deposit | Amount |
| --- | --- |
| Jan. 6 | $3,635 |
| Jan. 17 | 5,340 |
| Jan. 23 | 4,000 |
| May 5 | 1,785 |
| June 22 | 800 |
| Nov. 20 | 1,700 |
| Dec. 19 | 3,500 |

Consequently, we are unable to conclude that these deposits were made from nontaxable sources. Respondent's determination that petitioner's 1995 income was understated by the total of these deposits is therefore sustained.

## 2. Self-Employment Tax

We accept petitioner's claim that with the exception of Submarine 21, he was not otherwise employed, or self-employed during 1995. To the extent that Submarine 21 was the source of the omitted income as determined above, that income would not constitute net earnings from self-employment, see sec. 1402, and therefore would not be subject to the section 1401 tax imposed on such income. Consequently, we reject respondent's determination that the omitted income is subject to the section 1401 tax.

## 3. Negligence Penalty

Respondent determined that the understatement of tax required to be shown on petitioner's 1995 return is due to negligence. Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations. Section 6662(a) defines "negligence" to include any failure to make a reasonable attempt to comply with the Internal Revenue Code, and defines "disregard" to include any careless, reckless, or intentional disregard of rules or regulations. The negligence penalty does not apply to any portion of an underpayment if it is

shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect thereto.  See sec. 6664(c)(1).

Petitioner claims that he did not omit any income from his 1995 return, but we have found differently as discussed above. Otherwise, petitioner offered no evidence to establish that respondent's imposition of the negligence penalty is erroneous. Accordingly, respondent's determination that petitioner is liable for the negligence penalty for 1995 is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

Based on the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.